## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

| | |
|---|---|
| DAVID SPERRY, Individually and on Behalf of All Others Similarly Situated, | **Case No.** |
| | Jury Trial Demanded |
| v. | Collective Action (29 U.S.C. § 216(b)) |
| INTEGRATED PETROLEUM TECHNOLOGIES, INC | Class Action (Fed. R. Civ. P. 23) |

## ORIGINAL COMPLAINT

### SUMMARY

1.      David Sperry (Sperry) brings this lawsuit against Integrated Petroleum Technologies, Inc. (IPT) to recover unpaid overtime wages and other damages owed under the Fair Labor Standards Act (FLSA) and the New Mexico Minimum Wage Act, NMSA §50-4-19, *et. seq.* (NMMWA).

2.      IPT suffered or permitted Sperry, and the other workers like him, to work far more than 40 hours each week.

3.      But these workers did not receive overtime compensation while working for IPT.

4.      Instead of paying overtime as required by state and federal law, IPT misclassified these workers as independent contractors and paid them a daily rate with no overtime pay.

5.      This class and collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### JURISDICTION AND VENUE

6.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

7.      The Court has supplemental jurisdiction over the NMMWA claims pursuant to 28 U.S.C. § 1367 because they arise from the same common nucleus of operative facts as the FLSA claims

asserted.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to this action occurred in this District.

9.      Sperry worked for IPT in Eddy and Lea Counties, New Mexico.

## THE PARTIES

10.      Sperry worked for IPT as a Drilling Consultant from approximately May 2018 until August 2019.

11.      Throughout his time with IPT, IPT paid Sperry was paid a day-rate with no overtime compensation.

12.      Sperry's consent to be a party plaintiff is attached as Exhibit A.

13.      Sperry represents at least two classes of similarly situated co-workers

14.      First, Sperry brings this action on behalf of himself and all other similarly situated workers paid by IPT's day-rate system.

15.      IPT or its staffing company paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in accordance with the FLSA.

16.      The FLSA class of similarly situated workers consists of:

**All Drilling and Completions Consultants employed by or performing work on behalf of IPT who were classified as independent contractors and paid a day-rate without overtime during the past three years.** (the Day-Rate Workers).

17.      Second, Sperry represents a class of similarly situated oilfield workers under the NMMWA pursuant to Federal Rule of Civil Procedure 23.

18.      The NMMWA Class is defined as:

**All Drilling and Completions Consultants employed by or performing work on behalf of IPT in New Mexico who were classified as independent contractors**

**and paid a day-rate without overtime during the past three years.** (the New Mexico Class).

19.     The Day-Rate Workers and New Mexico Class will be referred to as the Putative Class Members.

20.     IPT is a Colorado company doing business throughout the United States. IPT may be served by serving its registered agent for service of process: Brad Cornell, 3033 East First Avenue, Suite 700, Denver, CO 80206.

### COVERAGE UNDER THE FLSA

21.     For at least the past three years, IPT has been an employer within the meaning of section 3(d) of the FLSA, 29 U.S.C. § 203(d).

22.     For at least the past three years, IPT has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

23.     For at least the past three years, IPT has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – including cell phones, hard hats, oil field equipment, and computers – that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $1,000,000.

24.     For at least the past three years, Sperry and the Day Rate Workers were engaged in commerce or in the production of goods for commerce.

25.     IPT treated Sperry (and other drilling and completions consultants it classified as independent contractors) as employees and uniformly dictated the pay practices to which Sperry and its other employees (including its so-called "independent contractors") were subjected.

26.     IPT's misclassification of Sperry as an independent contractor does not alter its status as his employer for purposes of this FLSA collective action

## FACTS

27.     IPT is an oil and gas company that provides consulting services in the Eagle Ford, Permian Basin, Bakken/Three Forks, Niobrara, Marcellus and other major unconventional plays in the United States. https://www.iptenergyservices.com/overview-of-services/ (last visited on October 24, 2021).

28.     To complete its business objectives, IPT hires oilfield personnel to perform the necessary work.

29.     Over the past three years, IPT employed dozens of individuals – including Sperry – in positions such as Completions Consultants and Drilling Consultants.

30.     Even if the exact job titles and job duties may differ, the Putative Class Members are subjected to the same or similar illegal pay practices for similar work.

31.     Specifically, IPT classified these workers as independent contractors and paid them a flat sum for each day worked (regardless of the number of hours worked in that workweek).

32.     IPT uniformly failed to pay the Putative Class Members overtime for hours worked in excess of 40 in a workweek.

33.     For example, Sperry worked for IPT as a Drilling Consultant from approximately May 2018 until August 2019.

34.     Throughout this time, IPT paid him on a day-rate basis.

35.     As a Drilling Consultant, Sperry's primary job duties included observing drilling operations on the well and ensuring that the team was following IPT and industry standards' policies and procedures.

36.     Sperry worked well in excess of 40 hours each week while employed by IPT.

37.   The work Sperry performed was an essential part of IPT's core business.

38.   During Sperry's employment with IPT while he was classified as an independent contractor, IPT exercised control over all aspects of his job.

39.   IPT did not require any substantial investment by Sperry for him to perform the work required of him.

40.   IPT paid Sperry directly through a limited liability company he set up.

41.   IPT knew Sperry was being paid a day rate while he performed work for it.

42.   IPT determined Sperry's opportunity for profit and loss.

43.   Indeed, IPT controlled all the significant or meaningful aspects of the job duties performed by Sperry.

44.   IPT ordered the hours and locations Sperry worked, owned and assigned the tools used, and determined the rates of pay he received.

45.   IPT controlled all aspects of Sperry's job activities by enforcing mandatory compliance with IPT's policies and procedures.

46.   No real investment was required of Sperry to perform his job.

47.   He worked on IPT's well sites and utilized equipment and software provided by IPT to perform his job duties on IPT's behalf.

48.   These workers carry out the hands-on, day-to-day production work of IPT.

49.   Sperry did not provide the equipment he worked with on a daily basis.

50.   IPT made the large capital investments in buildings, machines, drilling equipment, personnel, tools, and supplied in the business in which Sperry worked.

51.   Sperry did not incur operating expenses like rent, payroll and marketing.

52.   Sperry was economically dependent on IPT during his employment.

53.     IPT set Sperry's rates of pay, his work schedule, and prohibited him from working other jobs for other companies while he was working on jobs for IPT.

54.     IPT directly determined Sperry's opportunity for profit and loss.

55.     Sperry's earning opportunity was based on the number of days IPT scheduled him to work.

56.     Very little skill, training, or initiative was required of Sperry to perform his job duties.

57.     Indeed, the daily and weekly activities of the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by IPT.

58.     Virtually every job function was pre-determined by IPT, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties.

59.     The Putative Class Members were prohibited from varying their job duties outside of the pre-determined parameters.

60.     Moreover, the job functions of the Putative Class Members were primarily manual labor/technical in nature, requiring little to no official training, much less a college education or other advanced degree.

61.     The Putative Class Members did not have any supervisory or management duties and to the extent that they did, they performed those duties on IPT's behalf.

62.     For the purposes of an FLSA and NMMWA overtime claims, the Putative Class Members performed substantially similar job duties related to servicing oil and gas operations in the field.

63.     Sperry performed routine duties that were largely dictated by IPT.

64.     IPT did not employ Sperry on a project-by-project basis.

65.     In fact, while Sperry was classified as an independent contractor, he was regularly on call for IPT and was expected to drop everything and work whenever needed.

66.     Sperry was paid directly by IPT.

67.     Sperry was directly interviewed by IPT and hired by IPT.

68.     The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice.

69.     The Putative Class Members all worked in excess of 40 hours each week and were often scheduled for daily 12-hour shifts for 2 or more weeks at a time.

70.     Instead of paying them overtime, IPT paid the Putative Class Members a day-rate.

71.     IPT denied the Putative Class Members overtime for any hours worked in excess of 40 hours in a single workweek.

72.     IPT's policy of failing to pay its independent contractors, including Sperry, overtime violates the FLSA because these workers are, for all purposes, employees performing non-exempt job duties.

73.     It is undisputed that the contractors are maintaining and working with oilfield machinery, performing manual labor, and working long hours out in the field.

74.     Because Sperry (and IPT's other independent contractors) was misclassified as an independent contractor by IPT, he should receive overtime for all hours that he worked in excess of 40 hours in each workweek.

75.     IPT did not pay Sperry on a salary basis.

76.     IPT did not pay the Putative Class Members on a salary basis.

77.     IPT paid Sperry on a day-rate basis.

78.     IPT  paid the Putative Class Members on a day-rate basis.

79.     Despite knowing the FLSA and NMMWA's requirements, IPT failed to pay Sperry and the Putative Class Members overtime for hours worked in excess of 40 hours in a single workweek.

80. IPT knew, or showed reckless disregard for whether, its day-rate pay policy violated the FLSA and NMMWA.

## FLSA VIOLATIONS

81. Sperry incorporates the preceding paragraphs by reference.

82. As set forth herein, IPT violated the FLSA by failing to pay Sperry and the Day-Rate Workers overtime at 1 and ½ times their regular rate of pay for hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a).

83. IPT's pay policy denied Sperry and the Day-Rate Workers overtime compensation at the legal overtime rates required by the FLSA.

84. IPT owes Sperry and the Day-Rate Workers overtime wages equal to 1 and ½ their regular rates for each overtime hour worked during the last three years.

85. IPT knew, or showed reckless disregard for whether, its failure to pay overtime violated the FLSA. Its failure to pay overtime to Sperry and the Day-Rate Workers is and was willful.

86. Due to IPT's FLSA violations, Sperry and the Day-Rate Workers are entitled to recover from IPT for their unpaid overtime, liquidated damages, reasonable attorney fees, costs, and expenses of this action.

## NMMWA VIOLATIONS

87. Sperry brings this claim under the NMMWA as a Rule 23 class action.

88. The conduct alleged violates the NMMWA (NMSA § 50-4-22).

89. At all relevant times, IPT was subject to the requirements of the NMMWA.

90. At all relevant times, IPT employed Sperry and each member of the New Mexico Class as an "employee" within the meaning of the NMMWA.

91. The NMMWA required IPT to pay its employees at 1 and ½ times the regular rate of pay for hours worked in excess of 40 hours in any one week.

92.      Sperry and each member of the New Mexico Class are entitled to overtime pay under the NMMWA.

93.      IPT had a policy and practice of misclassifying Sperry and each member of the New Mexico Class as independent contractors and failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

94.      Sperry and each member of the New Mexico Class seek unpaid overtime in amount equal to 1 and ½ times their regular rates of pay for hours worked in excess of 40 in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

95.      Sperry and each member of the New Mexico Class also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by IPT, as provided by the NMMWA.

96.      The improper pay practices at issue were part of a continuing course of conduct, entitling Sperry and New Mexico Class Members to recover for all such violations, regardless of the date they occurred

### CLASS & COLLECTIVE ACTION ALLEGATIONS

97.      Sperry incorporates all previous paragraphs and alleges that the illegal pay practices IPT imposed on them were likewise imposed on the Putative Class Members.

98.      Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA and the NMMWA.

99.      On information and belief, the New Mexico Class contains more than 50 members.

100.      Numerous other individuals who worked with Sperry indicated they were improperly classified as contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

101.      Based on his experiences and tenure with IPT, Sperry is aware that IPT's illegal

practices were imposed on the Putative Class Members.

102.    IPT used day-rate contractors in New Mexico, Colorado, Texas, North Dakota, Pennsylvania, among other states.

103.    The Putative Class Members were all improperly classified as independent contractors and not afforded overtime compensation when they worked in excess of forty 40 hours per week.

104.    IPT is the, or at least an employer of Sperry and the Putative Class Members.

105.    IPT's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

106.    Sperry's experiences are therefore typical of the experiences of the Putative Class Members.

107.    The specific job titles or precise job locations of the various Putative Class Members do not prevent class or collective treatment.

108.    Sperry has no interest contrary to, or in conflict with, the Putative Class Members.

109.    Like the Putative Class Members, Sperry has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

110.    A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

111.    Absent this action, many members of the classes likely will not obtain redress of their injuries and IPT will reap the unjust benefits of violating the FLSA and the NMMWA.

112.    Furthermore, even if some of the Putative Class Members of the classes could afford individual litigation against IPT, it would be unduly burdensome to the judicial system.

113.    Concentrating the litigation in one forum will promote judicial economy and parity

among the claims of the Putative Class Members and provide for judicial consistency.

114.    The questions of law and fact common to the Putative Class Members predominate over any questions affecting solely the individual members.

115.    Among the common questions of law and fact are:

(a)    Whether IPT employed Sperry and the Putative Class Members within the meaning of the FLSA and the NMMWA;

(b)    Whether Sperry and the Putative Class Members were improperly misclassified as independent contractors;

(c)    Whether IPT's decision to classify Sperry and the Putative Class Members as independent contractors

(d)    Whether IPT's decision to classify Sperry and the Putative Class Members as exempt was made in good faith;

(e)    Whether IPT's decision to not pay time and a half for overtime to Sperry and the Putative Class Members was made in good faith;

(f)    Whether IPT's violations of the FLSA was willful; and

(g)    Whether IPT's illegal pay practices were applied uniformly to all Putative Class Members.

116.    Sperry's claims are typical of the claims of the Putative Class Members.

117.    Sperry and the Putative Class Members sustained damages arising out of IPT's illegal and uniform employment policy.

118.    Sperry knows of no difficulty that will be encountered in the management of this litigation that would preclude their ability to go forward as a class or collective action.

119.    Even if the issue of damages is somewhat individual in character, there is no detraction from the common nucleus of liability facts.

**JURY DEMAND**

120.    Sperry demands a trial by jury.

**RELIEF SOUGHT**

121.   Sperry therefore prays for judgment against IPT awarding:

(a)    Certification of a collective action of all Day Rate Workers;

(b)    Certification of a class action of the Putative Class Members;

(c)    All unpaid overtime and liquidated damages due to Sperry and the Day-Rate Workers under the FLSA;

(d)    All unpaid overtime and treble damages due to Sperry and the New Mexico Class under the NMMWA;

(e)    All attorney's fees, expenses, and costs of this action;

(f)    Pre- and post-judgment interest at the highest rates allowed by law; and

(g)    All other and further relief as may be necessary and appropriate.

Respectfully submitted,

**JOSEPHSON DUNLAP, LLP**

By:  */s/ Michael A. Josephson*
    Michael A. Josephson
    State Bar No. 24014780
    Andrew W. Dunlap
    State Bar No. 24078444
    Richard M. Schreiber
    State Bar No. 24056278
    **JOSEPHSON DUNLAP LLP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com
    rschreiber@mybackwages.com

    **AND**

    Richard J. (Rex) Burch
    Texas Bar No. 24001807
    **BRUCKNER BURCH, PLLC**
    11 Greenway Plaza, Suite 3025
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com

    **ATTORNEYS IN CHARGE FOR PLAINTIFFS**